# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **BILLY DWAYNE WILSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:15-CV-0435-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Billy Dwayne Wilson (hereinafter "Mr. Wilson") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Mr. Wilson timely pursued and exhausted his administrative remedies available before the Commissioner. The case

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

is thus ripe for review under 42 U.S.C. § 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Wilson was 53 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 174 *with* Tr. 44. He has completed the eleventh grade, and received a GED. Tr. 72. His past work experience includes employment as a heating and air conditioner installer. Tr. 74. He claims he became disabled on May 24, 2011, due to colon problems. Tr. 178, 51. His last period of work ended on May 24, 2011. Tr. 206. He will be last insured on December 31, 2016. Tr. 27.

On August 16, 2011, Mr. Wilson protectively filed a Title II application for a period of disability and DIB. Tr. 172. He also protectively filed a Title XVI application for SSI on that date. *Id.* On November 18, 2011, the Commissioner initially denied these claims. Tr. 98. Mr. Wilson timely filed a written request for a hearing on January 9, 2012. Tr. 114. The ALJ conducted a hearing on the matter on March 27, 2013. Tr. 46. On August 29, 2013, he issued his opinion concluding Mr. Wilson was not disabled and denying him benefits. Tr. 23. On the same day, he timely petitioned the Appeals Council to review the decision. Tr. 1. On January 12, 2015,

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

the Appeals Council issued a denial of review on his claim. *Id.*

Mr. Wilson filed a Complaint with this court on March 13, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on June 29, 2015. (Doc. 2). Mr. Wilson filed a supporting brief (Doc. 8) on August 13, 2015, and the Commissioner responded with her own (Doc. 9) on September 14, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and **AFFIRMS** the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no

3

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of July 28, 2016.

4

diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(i)     whether the claimant is currently employed;

(ii)    whether the claimant has a severe impairment;

(iii)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(iv)    whether the claimant can perform his or her past work; and

(v)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

5

in significant numbers. *Id.*

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ made the following findings:

1.    Mr. Wilson met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 30.

2.    He had not engaged in substantial gainful activity since May 24, 2011, the alleged disability onset date. *Id.*

3.    He had the following severe impairments: history of chronic obstructive pulmonary disease (C.O.P.D.), right ankle pain, and abdominal pain with diarrhea. *Id.*

4.    He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33.

5.    He had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). *Id.*

6.    He was unable to perform any past relevant work. Tr. 37.

7.    He was 51 years old, which is defined as a person closely approaching advanced age, on the alleged disability date. *Id.*

8.    He had a general education diploma and was able to communicate in English. *Id.*

9.    He had acquired work skills from past relevant work. *Id.*

10.    Considering his age, education, work experience, and residual functioning capacity, he had acquired work skills from past relevant work that are transferable to jobs that existed in significant numbers in the national economy that he could perform. Tr. 38.

6

11.    Mr. Wilson had not been under a disability, as defined in the Social Security Act, from May 24, 2011, through the date of this decision. *Id.*

## ANALYSIS

## I.    INTRODUCTION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Wilson urges this court to reverse the Commissioner's decision to deny his benefits on two grounds. First, he claims that the ALJ improperly classified his RFC as light work, when sedentary was the correct RFC. (Doc. 8 at 4-6). This argument is based on Mr. Wilson's contention that the ALJ improperly discounted part of the opinion-evidence offered by Dr. Prameela Goli, M.D. ("Dr. Goli") post-hearing. *Id.* at 5. Second, Mr. Wilson argues that the ALJ erred when he determined that Mr.

_____

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Wilson's skills as a heating and air conditioning installer were transferable to new work. *Id.* at 6-8.

## II. THE ALJ'S DECISION TO DISCOUNT PART OF DR. GOLI'S OPINION AND FIND THAT MR. WILSON'S RFC WAS LIGHT WORK WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Mr. Wilson was treated by Dr. Goli once, after the evidentiary hearing. Tr. 400. Dr. Goli is thus a consultative physician. Mr. Wilson further points out that the ALJ erred by not accepting all of Dr. Goli's testimony. (Doc. 8 at 5). Mr. Wilson claims that if the ALJ had accepted Dr. Goli's testimony in its entirety, that would have led the ALJ to find that Mr. Wilson's RFC was sedentary, not light work. *Id.* The ALJ gave partial weight to Dr. Goli's testimony. Tr. 36. When Dr. Goli's testimony contradicted itself, or contradicted other evidence in the record, the ALJ considered this evidence less reliable. Tr. 37.

The ALJ cannot substitute his opinion for the opinion of medical or vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 732 (11th Cir. 1992). It is improper for the ALJ to act as a physician. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J. concurring) ("[The ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional."). A treating doctor's opinion is given more weight than the opinion of a consultative doctor. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (citing *Oldham v. Schweiker*, 660 F.2d

8

1078, 1084 (5th Cir. Unit B 1981)); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). A consultative doctor's opinion is not entitled to deference and can be discounted. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

Several unpublished Eleventh Circuit cases give guidance to determine whether an ALJ made a reversible error in discounting a RFC evaluation from a physician. In cases where there was a RFC analysis by a physician, but it was not mentioned or explicitly discounted by the ALJ, the Eleventh Circuit has remanded, ordering the ALJ to consider that evidence, or clearly state why he chose to discount it. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (remanding when the ALJ gave great weight to a physician's RFC analysis, but ignored a critical portion); *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871 (11th Cir. 2012) (remanding where the ALJ gave great weight to a physician's RFC opinion, but failed to explain why he seemed to discount one portion); *Gaskin v. Comm'r of Soc. Sec.*, 533 F. App'x 929 (11th Cir. 2013) (remanding so the ALJ could expressly consider a RFC opinion he had previously failed to address). But in other cases, in which the ALJ explicitly explained the weight given to the RFC opinion and the reasons for it, the Eleventh Circuit has affirmed. *See Newberry v. Comm'r, Soc. Sec. Admin.*, 572

9

F. App'x 671, 671 (11th Cir. 2014) (remand not needed if it was clear that the ALJ's conclusion was based on substantial objective medical evidence, even if some RFC opinion disagreed); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (remand not necessary when the ALJ discounted consulting physician's opinion that plaintiff could not work, because it was considered by the ALJ, but rejected because it contradicted other objective evidence). An ALJ can reject a RFC evaluation when it is inconsistent with the objective evidence that doctor found, or other medical information in the record, so long as there is ultimately substantial evidence to support the ALJ's RFC finding. *See Ogranaja v. Comm'r of Social Sec.*, 186 F. App'x 848, 850-51 (11th Cir. 2006) (ALJ did not err in discounting portions of a RFC opinion that contradicted the doctor's own objective evaluation, and contradicted the evaluations of other doctors); *Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (ALJ did not err by discounting disability reports when they contradicted that doctor's treatment notes). In at least one case, the Eleventh Circuit affirmed an ALJ who discounted the RFC report of a doctor because it was based on self-reporting by the claimant that the ALJ found was not credible, and explained his reasons for that finding. *See Weekley v. Comm'r of Soc. Sec.*, 486 F. App'x. 806, 808 (11th Cir. 2012) (ALJ did not err in questioning the claimant's credibility, and the effect of her self-reporting on a doctor's RFC evaluation); *see also Moore v.*

*Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ.").

The ALJ found that Dr. Goli's recommendation that Mr. Wilson use a cane (Tr. 404), and his opinion that Mr. Wilson could only lift up to ten pounds, was not reliable. The ALJ dismissed the cane diagnosis as being inconsistent with other evidence and based on dubious self-reporting by Mr. Wilson. If the ALJ had accepted the cane diagnosis, Mr. Wilson would likely be unable to meet the "good deal of walking or standing" requirement of light work. 20 C.F.R. § 404.1567(b); § 416.967(b). Mr. Wilson's use of the cane was not mentioned by any other treating or examining physician, including specifically his multiple treating physicians at UAB Medical West. Tr. 36. Although Mr. Wilson came with a cane when he went to see Dr. Goli, the results of her physical examination of him do not straightforwardly support his need for a cane. *See* Tr. 400 (finding that hip, ankles, feet are all relatively normal, despite some issues with his right hip). It seems that the recommendation was based solely on Mr. Wilson's self-report. *See id.* ("[H]e states the pain seems to be really bad in his hip."). But Mr. Wilson did not report to Dr. Clark Gray, M.D. ("Dr. Gray"), a treating physician, that he was using a cane, if he was using one. *See* Tr. 221 (Mr. Wilson did not check a box that would indicate he was using a cane); *see also* Tr. 311, 314 (Dr. Gray did not check a box that would indicate Mr. Wilson was

11

using a cane). Other aspects of his self-reporting to Dr. Goli conflict with the rest of his medical records, demonstrating why the ALJ found him less than credible.[5] *See* Tr. 35-37. Though not referring to whether Mr. Wilson needed a cane, Steven Zimmerman, who also reviewed Mr. Wilson's medical records, noted that "[m]any of the symptoms and limitations mentioned by the claimant do not have medical evidence to support them." Tr. 349.[6]

There is substantial evidence to support the ALJ's finding that Mr. Wilson could meet the "good deal of walking or standing" requirement of light work as required by a RFC of light work under 20 C.F.R. § 404.1567(b); § 416.967(b). The ALJ relied on the opinion of Dr. Hasson, who twice found that Mr. Wilson's musculoskeletal system showed "no joint pain; no muscle pain." Tr. 335, 372; *see* Tr. 36 (ALJ's reliance on this testimony). Dr. Hasson also suggested that Mr. Wilson should walk–and thus, in his opinion necessarily <u>could</u> walk–thirty minutes a day. Tr. 335; *see* Tr. 36 (ALJ's reliance on this testimony).

The ALJ also found that Dr. Goli's functional assessment that Mr. Wilson

---

[5] Specifically, Mr. Wilson alleges rapid weight loss that is not supported by his medical records. He told Dr. Goli that he had lost almost 50 pounds in the past forty days from 174 pounds to 125 pounds. Tr. 400. However, on his most recent visit to the doctor in the record before the visit to Dr. Goli he weighed 130 pounds. Tr. 384.

[6] Though the ALJ made clear that he did not rely on Mr. Zimmerman's findings (Tr. 37), it is nonetheless worth noting that both the ALJ and Mr. Zimmerman independently questioned Mr. Wilson's credibility, after reviewing the same medical records.

could only lift ten pounds frequently was not reliable because it conflicted with Dr. Goli's own objective findings, and was based on dubious self-reporting. Tr. 36. If the ALJ had accepted the "frequently lift up to ten pounds" diagnosis, he may have found that Mr. Wilson did not meet requirements of light work, specifically the requirement that he lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); § 416.967(b). Mr. Wilson told Dr. Goli that he "has trouble even lifting a glass of water." Tr. 400. But Dr. Goli's examination of Mr. Wilson's upper extremities showed no issue with range of motion, and no issue with his elbows or wrists, though he noted some shoulder pain. Tr. 401; *see also* Tr. 37 (ALJ's reliance on this medical testimony). The ALJ noted that other examinations "regularly demonstrated that the claimant exhibited no musculoskeletal or strength abnormalities, no abnormalities, no wasting or muscle loss." Tr. 37; *see also* Tr. 335 (Dr. Jack Hasson, a treating physician, noted normal musculoskeletal system); *see also* Tr. 356, 374 (other examples of identical reports by Dr. Hasson). It seems implausible that Mr. Wilson would be unable to lift a glass of water, while multiple times Dr. Hasson found that he had "normal strength." Given the contradictions both within Dr. Goli's report and with reports from other physicians, the ALJ's decision to discount Dr. Goli's RFC conclusion was supported by substantial evidence.

Instead of Dr. Goli's opinion, the ALJ relied on the records of other treating physicians when he determined that Mr. Wilson's proper RFC was light work. Most of the evidence the ALJ cites to in his opinion discounts the alleged severity of Mr. Wilson's colon and breathing problems and their impact on his ability to work. Tr. 33-36. The ALJ discounts Mr. Wilson's subjective testimony about the severity of these medical issues, citing the Eleventh Circuit standard in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991) (giving a three-part test for an ALJ to follow in discounting subjective evidence). Mr. Wilson does not contest these findings in his brief; they are supported by substantial evidence. The other treating physicians in the record focused on Mr. Wilson's breathing and abdominal issues, and did not address his musculoskeletal condition. Since the ALJ had substantial evidence for his findings, made apparent which parts of Dr. Goli's opinion he discounted, and made clear his reasons for doing so, there is no error in his RFC determination.

## III.   THE ALJ DID NOT ERR BY CONCLUDING THAT MR. WILSON HAD TRANSFERABLE SKILLS.

A skill is a "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Zimmer v. Comm'r of Soc. Sec.*, 211 F. App'x 819, 820 (11th Cir. 2006) (citing S.S.R.

82–41 at 2, 1975-1982 Soc.Sec.Rep.Serv. 847 (Jan. 1, 1982)) (internal quotations omitted). Transferability is more likely when jobs have similar levels of skill, or similar tools, processes, products or services, though these do not all need to be present. *Id*. (citing 20 C.F.R. §§ 404.1568(d)(2), 416.968(d)(2)). An ALJ can rely on the testimony of a VE to determine "what level of skill the claimant achieved in his past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs." *Id*. (citing *Jones v. Apfel*, 190 F.3d 1224,1229 (11th Cir. 1999)). An ALJ "may rely solely on a VE's testimony." *Jones*, 190 F.3d at 1230. The ALJ in the present case relied on the VE's testimony. *See* Tr. 37 (using the VE's testimony for his ninth finding); *see also* Tr. 74 (VE's testimony that past work was skilled). It is notable that after finding that Mr. Wilson had transferable skills, the jobs the VE found that Mr. Wilson could perform were all unskilled jobs–cashier, marker, and bench assembler. *See* Tr. 76 (VE's testimony that cashier, marker, and bench assembler are all unskilled); *see also* Tr. 38 (ALJ's reliance on the VE's testimony). Since the ALJ properly relied on the VE, the ALJ's finding that Mr. Wilson's skills are transferable is supported by substantial evidence.

But even if the ALJ had erred when he determined that Mr. Wilson's skills were transferable and applied the incorrect rule under the Medical/Vocational Guidelines, this would have been a harmless error. In the Eleventh Circuit, courts will

not reverse and remand if the error does not prejudice the claimant. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (remand not needed for harmless error of misclassifying plaintiff's age and work history); *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) ("However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). This standard should apply to the use of the incorrect rule under the Medical/Vocational Guidelines. *See Burrell v. Astrue*, No. 11-0141-N, 2012 WL 3817788, at *4 n.4 (S.D. Ala. Aug. 31, 2012) ("The court is satisfied that, where there exists another Grid Rule applicable to plaintiff's position which would support the same determination as was made using the wrong rule, harmless error analysis applies.")

Applying the Medical/Vocational Guideline Grids, 20 C.F.R. § 404.1569, Appendix 2, Mr. Wilson argues that he should be evaluated as someone who has previous work experience of "Skilled or semi-skilled–skills not transferable." The ALJ evaluated Mr. Wilson under Table 2, since the ALJ found that he had a RFC of light work.[7] Mr. Wilson is "closely approaching advanced age", since he was 51 years old on the alleged onset date. He has a general education diploma, which is the

---

[7] The plaintiff's brief points to Table 1, based on his contention that the ALJ improperly found that he had a RFC of light work. The court rejected those arguments above.

equivalent of a high school diploma, meaning that Mr. Wilson is treated as a high school graduate. *See* 34 C.F.R. § 600.2 (Department of Education defining a GED as the equivalent of a high school diploma). Applying each of those factors to the grids, whether Mr. Wilson's skills were transferable would only determine whether Rule 202.14 or Rule 202.15 applies. Under either rule, the decision is the same–not disabled. In other words, under Grid Rules 202.13 and 202.14, Mr. Wilson would still be classified as not disabled. Thus, remand for such a harmless error, even assuming *arguendo* that such an error exists, would be improper.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that he applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this the 5th day of August, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge